FREDERICK SLADE & others[1] *vs.* WILLIAM H. ORMSBY
& another.[2]

No. 05-P-1683.

Suffolk. October 12, 2006. - July 11, 2007.

Present: RAPOZA, C.J., LAURENCE, & GREEN, JJ.[3]

*Attorney at Law,* Disqualification, Conflict of interest. *Practice, Civil,* Appeal, Reconsideration. *Notice,* Timeliness.

The defendants in a civil action preserved their right to appeal from an order disqualifying their attorney, where they timely served a motion for reconsideration that tolled the thirty-day appeal period, and then timely filed a notice of appeal once that motion had been denied. [544-545]

This court remanded an appeal from a trial court judge's order granting a motion to disqualify the attorney representing the defendants in a civil action, where the motion judge did not make sufficient findings to support the assertion that the attorney's representation, in an earlier action, of both the plaintiffs and the defendants was substantially related to the instant action. [545-548]

CIVIL ACTION commenced in the Land Court Department on November 4, 1988.

A motion to disqualify counsel, filed on September 26, 1994, was considered by *Karyn F. Scheier,* J., and a motion for reconsideration, filed on November 29, 1994, was heard by her.

*John D. Hallisey* for the defendants.

*Peter S. Farber* for the plaintiffs.

RAPOZA, C.J. William H. Ormsby and Sandra Ormsby Howerton (collectively, the Ormsbys) appeal from a Land Court judge's order disqualifying their attorney, John Hallisey, from

---

[1]Cynthia Slade Hurd and Marcia Brown Meigs.

[2]Sandra Ormsby Howerton. A suggestion of death and a motion for substitution of parties as to Ralph Ormsby, the original defendant, was filed in this court on December 19, 2005. The motion was subsequently allowed.

[3]Justice Laurence participated in the deliberation on this case prior to his retirement.

representing them in the underlying land dispute with Frederick Slade, Cynthia Slade Hurd, and Marcia Brown Meigs (collectively, the Slades). Before reaching the merits of the disqualification order, however, we address whether the timely service by the Ormsbys' counsel of a motion to reconsider tolled the relevant appellate deadline.

*Background.* We consider the facts recited in the motion judge's decision, supplemented by undisputed facts contained in the record. In 1983, Hallisey served as counsel for both the Ormsbys and the Slades in an eminent domain proceeding in the United States District Court for the District of Massachusetts. In that case, the United States sought to take a parcel of land for the Cape Cod National Sea Shore (seashore tract). A slice of the land adjacent to the seashore tract (the locus) was not sought by the United States, and thus was not at issue in the Federal case. In any event, Hallisey successfully represented the Slades and the Ormsbys against a third party's claim of ownership in the seashore tract, and the Federal District Court judge ruled that both the Slades and the Ormsbys owned a one-half undivided interest in that property.

Five years later, however, the interests of Hallisey's clients diverged. In 1988, the Slades, now represented by different counsel, claimed exclusive ownership of the locus. In this regard, the Slades filed a complaint for confirmation of title in the Land Court. Meanwhile, Hallisey continued to represent the Ormsbys and filed an answer to the Slades' complaint on the Ormsbys behalf in 1993. The Ormsbys' answer asserted a one-half ownership interest in the locus, relying on evidence and the decision from the previous Federal case regarding the seashore tract.

On September 26, 1994, the Slades filed a motion to disqualify Hallisey on the ground that he had previously represented both the Slades and the Ormsbys in the Federal case. The Slades also claimed that they had conveyed confidential information to Hallisey, as their attorney in the Federal case, that could be used to their disadvantage in the Land Court case. Proceeding without a hearing, the Land Court judge allowed the motion on November 18, 1994. On November 28, 1994, the Ormsbys served their motion for reconsideration, pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974), of the

disqualification order, and the judge denied the motion on May 29, 1996.[4] Within thirty days of the denial of the motion to reconsider on June 18, 1996, the Ormsbys filed a notice of appeal of the November 18, 1994, order.[5]

*Timeliness of the appeal.* The Slades now claim that the Ormsbys waived their right to appeal from the disqualification order because they did not file their notice of appeal within the thirty-day period required under the Massachusetts Rules of Appellate Procedure. See Mass.R.A.P. 3(a), as amended, 378 Mass. 927 (1979); Mass.R.A.P. (4)(a), as amended, 430 Mass. 1603 (1999).[6] The Ormsbys claim, however, that their subsequent motion for reconsideration, which was timely served on November 28, 1994, had a tolling effect. We agree, and conclude that the appeal was timely such that the case is properly before us.[7]

Under the present execution doctrine, a disqualification order, as we have here, is treated as a final judgment that is immediately appealable. *Borman* v. *Borman*, 378 Mass. 775, 780 (1979) (disqualification orders are immediately appealable as they "are conclusive of a party's right to counsel of his choice" and therefore cannot be remedied by a later appeal). *Kent* v. *Commonwealth*, 437 Mass. 312, 316 (2002) (certain interlocutory orders are "deemed final"). As such, a disqualification order is

---

[4]In 1996, the Ormsbys also filed several other unsuccessful motions from which they filed interlocutory appeals. Because of the procedural posture of this case, these appeals are not presently before us. See *infra.*

[5]Almost ten years elapsed between the filing of the notice of appeal and assembly of the record in the Land Court, due to reasons that are largely unexplained by the parties.

[6]In relevant part, Mass.R.A.P. (3)(a) provides that "[a]n appeal permitted by law from a lower court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 4."

Mass.R.A.P. (4)(a) provides a thirty-day window to file an appeal after "the date of the entry of the judgment appealed from."

[7]On June 26, 1996, the Ormsbys also filed a petition with the Appeals Court under G. L. c. 231, § 118, first par., seeking an interlocutory appeal of the November 18, 1994, disqualification order. The single justice denied that petition on July 1, 1996. The fact that the Ormsbys filed a petition with the single justice, which was denied without comment, does not affect the analysis. As a disqualification order is deemed final, the Ormsbys' appellate recourse was not with the single justice. Their apparent attempt to "cover all bases" is thus without consequence. See *Colomba* v. *DWC Assocs.*, 447 Mass. 1005 (2006).

subject to the thirty-day requirement for the filing of a notice of appeal. Mass.R.A.P. 3(a). Mass.R.A.P. (4)(a). Moreover, because disqualification orders are deemed final they may also be challenged by motions pursuant to Mass.R.Civ.P. 59(e).[8]

Here, the Ormsbys served a timely motion for reconsideration explicitly pursuant to rule 59(e). Such a motion, in turn, tolls the thirty-day appeal period by operation of Mass.R.A.P. (4)(a).[9] Having thus tolled the appeal period by the filing of their rule 59(e) motion and, once that motion was denied, having timely filed their notice of appeal within the requisite thirty days under Mass.R.A.P. 4(a), the Ormsbys preserved their appellate rights.

*Motion to disqualify.* With the Ormsbys' appeal properly before us, we conclude that this case should be remanded for appropriate findings on the motion to disqualify.

In deciding whether a disqualification of counsel is warranted, a judge must "reconcil[e] the right of a person to counsel of his choice on the one hand, and the obligation of 'maintaining the highest standards of professional conduct and the scrupulous administration of justice,' on the other." *Mailer* v. *Mailer*, 390 Mass. 371, 373 (1983), quoting from *Hull* v. *Celanese Corp.*, 513 F.2d 568, 569 (2d Cir. 1975). While "the right of a litigant to counsel of his choosing is not absolute and cannot always predominate," *Mailer* v. *Mailer, supra,* "[m]otions to disqualify must be considered in light of the principle that courts 'should not lightly interrupt the relationship between a lawyer and [a] client.' " *G.D. Mathews & Sons Corp.* v. *MSN Corp.*, 54 Mass. App. Ct. 18, 20 (2002), quoting from *Adoption*

---

[8]The Reporters' Notes to Mass.R.Civ.P. 59(e), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 1064-1065 (LexisNexis 2006), indicate that the rule is expansive and applies "*for example* [to] a motion for rehearing, reconsideration or vacation; a motion to amend a judgment of dismissal 'without prejudice'; or one to vacate a dismissal for want of jurisdiction" (emphasis supplied).

[9]Mass.R.A.P. 4(a) states in pertinent part, "If a timely motion under the Massachusetts Rules of Civil Procedure is filed in the lower court by any party . . . under rule 59 to alter or amend a judgment . . . the time for appeal for all parties shall run from the entry of the order . . . granting or denying . . . such motion. A notice of appeal filed before the disposition of [the rule 59 motion] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."

*of Erica*, 426 Mass. 55, 58 (1997). A "disqualification may occur *only* if the trial court [judge] determines that [a lawyer's] continued participation as counsel taints the legal system" (emphasis supplied). *Borman* v. *Borman, supra* at 788. In sum, judges should hesitate to order disqualification "except when absolutely necessary." *G.D. Mathews & Sons Corp.* v. *MSN Corp., supra* at 21, quoting from *Adoption of Erica, supra.*

Moreover, "motions to disqualify by their nature are intensely fact specific." *Coke* v. *Equity Residential Properties Trust,* 440 Mass. 511, 516 (2003). For this reason, "[c]harges of conflict of interest or failure to represent a client zealously warrant *searching review* before a disqualification order can be sustained" (emphasis supplied). *Adoption of Erica, supra* at 63-64.

In the Slades' motion to disqualify, they alleged that Hallisey intended to use confidences shared in the Federal case to their disadvantage in the Land Court case. The judge found that the Slades had transmitted confidences to Hallisey during the Federal case, but did not address whether those confidences were relevant to the Land Court case or if they had been shared with the Ormsbys. She evinced "concern" regarding the Slades' allegation, and then invoked the "substantial relationship test" to disqualify Hallisey.

Not every successive representation presents a conflict arising from the representation of a former client. *Adoption of Erica, supra* at 61. Under the "substantial relationship test," the Supreme Judicial Court has set forth two criteria to test a claim that an attorney should be disqualified because of a conflict arising from the representation of a former client: (1) "the current representation must be 'adverse' to the interests of the former client"; and (2) "the matters of the two representations must be 'substantially related.' " *Adoption of Erica, supra,* quoting from *Bays* v. *Theran,* 418 Mass. 685, 691 (1994). If the criteria are met, the test assumes that confidences have been shared during the former attorney-client relationship and that in the subsequent case "simply because of its substantial relationship to the former one, [the attorney would be exposed] to an intolerable strong temptation to breach his duty of confidentiality to the former client." *Bays* v. *Theran, supra,* quoting from

Note, Developments in the Law: Conflicts of Interest, 94 Harv. L. Rev. 1244, 1318 (1981). Although acknowledging the substantial relationship test and purporting to apply it, the motion judge's findings fell short.[10]

First, the judge implicitly concluded that Hallisey's current representation of the Ormsbys was adverse to the interests of the Slades. See *Adoption of Erica, supra* at 63-64. As to the second factor in the "substantial relationship test," the judge stated as follows:

> "In the present case, it is clear that the issues of owner-ship of [the] neighboring [seashore tract and the locus] are substantially related. Indeed, Respondents assert that owner-ship of both [parcels] is identical. Presumably, the only reason for litigating ownership of the contiguous parcels in separate forums is the location of [one parcel] within the Cape Cod National Seashore."

Given that motions to disqualify are "intensely fact specific," *Coke* v. *Equity Residential Properties Trust, supra* at 516, a more "searching" inquiry was required prior to disqualifying Hallisey. *Adoption of Erica, supra* at 63-64. In order to find that the two representations were substantially related, the judge should have examined the overlap and similarity between Halli-sey's representation of the Slades and the Ormsbys in the Federal case and Hallisey's subsequent representation of the Ormsbys in the Land Court case. Absent such a comparison, and without more detailed factual findings, the assertion of the motion judge that the two representations were substantially related was not adequately supported.[11]

It is not for this court to make the initial fact-finding inquiry

---

[10]A few weeks prior to the motion judge's order disqualifying counsel, the Supreme Judicial Court, in *Bays* v. *Theran, supra* at 691-692, had occasion to elaborate upon the substantial relationship test, but stated that the case before the court did not require it "to decide when, if ever, the 'substantial relation-ship' test is the appropriate test for analyzing the propriety of successive representations." More recently, in *Adoption of Erica, supra* at 61, the court confirmed the vitality of the test and actually applied it to the movant's conflict of interest claim.

[11]We note that while the exact parameters of what is required have not been spelled out, *Adoption of Erica, supra* at 62, more is required to sustain an order for disqualification.

into whether the disqualification order was proper. It may well be that the circumstances of Hallisey's successive representation makes this case an appropriate one for disqualification. However, considering the ramifications of such an order, we conclude that the motion judge must enter more than the findings made here prior to granting the motion for disqualification. Thus, the order allowing the motion to disqualify Hallisey as counsel is vacated, and the case is remanded to the Land Court for further findings consistent with this opinion.

*So ordered.*